UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN KAKOWSKI,<br>CDCR #BF-3315,<br><br>                             Plaintiff,<br><br>        vs.<br><br>KATHLEEN ALLISON, Secretary of the<br>California Department of Corrections and<br>Rehabilitation, et al.,<br><br>                             Defendants. | Case No.:  21cv1675-JAH (RBM)<br><br>**ORDER:**<br><br>**(1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS,**<br><br>**(2)  DENYING MOTION TO APPOINT COUNSEL, and**<br><br>**(3) DISMISSING COMPLAINT WITH LEAVE TO AMEND PURSUANT TO 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b)** |

Plaintiff Brian Kakowski, a state prisoner incarcerated at the Richard J. Donovan Correctional Facility ("RJD") in San Diego, California, is proceeding pro se in this civil rights action pursuant to 42 U.S.C. § 1983.  (ECF No. 1.)  Plaintiff claims his Fourteenth Amendment right to equal protection and his Eighth Amendment right to be free from cruel and unusual punishment were violated because treatment for Hepatitis-C at RJD is delayed until symptoms become severe enough to cause permanent liver damage, and because his Hepatitis-C was in remission until he re-contracted it as a result of inmates handling food who are not tested for communicable diseases.  (*Id.* at 4-15.)

1

Plaintiff did not prepay the civil filing fee required by 28 U.S.C. § 1914(a) at the time of filing and has instead filed a Motion to Proceed In Forma Pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a), along with a separately-filed copy of his inmate trust account statement. (ECF Nos. 2, 4.) He has also filed a Motion to Appoint Counsel. (ECF No. 24.)

## I.   Motion to Proceed In Forma Pauperis

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $402.[1]  *See* 28 U.S.C. § 1914(a).  The action may proceed despite a failure to prepay the entire fee only if leave to proceed in forma pauperis ("IFP") is granted pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007).  Section 1915(a)(2) also requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005).  From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1) &(4).  The institution collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which the account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2).  Plaintiff remains obligated to pay the entire fee in monthly installments regardless of whether their action is ultimately dismissed. *Bruce v. Samuels*, 577 U.S. 82, 84 (2016); 28 U.S.C. § 1915(b)(1) & (2).

---

[1]  In addition to a $350 fee, civil litigants, other than those granted leave to proceed IFP, must pay an additional administrative fee of $52. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2020)).

Plaintiff's prison certificate shows he had an average monthly balance of $1388.47 and average monthly deposits of $247.56 for the 6-months preceding the filing of this action, and an available balance of $19.33.  (ECF No. 3 at 1.)  The Court **GRANTS** Plaintiff's Motion to Proceed IFP and declines to impose the initial partial filing fee of $277.69 pursuant to 28 U.S.C. § 1915(b)(1) because his prison certificate indicates he may have "no means to pay it."  *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Taylor v. Delatoore*, 281 F.3d 844, 850 (9th Cir. 2002) (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to the lack of funds available to him when payment is ordered.")  Instead, the Court directs the Secretary of the California Department of Corrections and Rehailitation ("CDCR"), or her designee, to collect the entire $350 balance of the filing fee required by 28 U.S.C. § 1914 and to forward it to the Clerk of the Court pursuant to the installment payment provisions set forth in 28 U.S.C. § 1915(b)(1).

## II.   Screening pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b)

### A.   Standard of Review

Because Plaintiff is a prisoner and is proceeding IFP, his Complaint requires a pre-Answer screening pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b).  Under these statutes, the Court must *sua sponte* dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)).  "The purpose of § 1915A is to ensure that the targets of frivolous or malicious suits need not bear the expense of responding." *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (internal quote marks omitted).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of

Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that § 1915A screening "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).")  Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).   Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.  "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*  The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*

Title 42 U.S.C. § 1983 "creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001).  Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal quotation marks omitted).  "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

### B.    Allegations in the Complaint

Plaintiff alleges in claim one that Defendants CDCR Secretary Kathleen Allison, RJD Warden Marcus Pollard, and Plaintiff's treating physician at RJD, Dr. Clayton, failed to protect him and were deliberately indifferent to his health and safety in violation of equal protection under the Fourteenth Amendment and the prohibition against cruel and unusual punishment under the Eighth Amendment.  (ECF No. 1 at 4.)  He alleges he re-contracted

4

Hepatitis-C on or about March 17, 2021, as a direct result of the failure of Defendants Allison and Pollard to adhere to prison guidelines, protocols and policies in failing to ensure that inmates who work with food are "medically cleared," and by "allowing high risk medical [inmates] with Hepatitis, AIDS, etc. to be volunteers working in and around our food & or kitchen." (*Id*.) Plaintiff states he filed a 602-inmate appeal regarding that issue in 2020 which he withdrew after he was told by a supervising cook that inmates were tested every 90 days, only to find out it was not true. (*Id*. at 5.) He filed a second 602-inmate appeal on that issue which was rejected as untimely, and a third which was ignored. (*Id*.) Plaintiff states that nothing is being done about testing, and "that for years [inmates] are having sex in bathrooms, sharing needles as they do drugs etc. which all plays a part in 'failing to protect.'" (*Id*.) He claims that Defendants Allison and Pollard "have a constitutional and statutory responsibility for the" safety and health of inmates at RJD, and "are responsible for ensuring their subordinates obeyed regulations & ordinances." (*Id*. at 6.) He states he "is holding Dr. Clayton accountable as Dr. failed to adhere, investigate or look into acts of deliberate indifference when Plaintiff told Clayton Hep C was recontracted due to him not doing proper medical tests of [inmates] working in the kitchen - once telling Clayton of situation Clayton brushed it off, as if not his problem?" (*Id*. at 7.)

Plaintiff alleges in claim two that his Eighth and Fourteenth Amendment rights to equal protection and to be free from cruel and unusual punishment were violated because "the process that decides who actually gets treatment for 'Hep C' is ambiguous, arbitrary and objectively unreasonable." (*Id*. at 8.) He contends that treatment for Hepatitis-C at RJD amounts to deliberate indifference to his health because it is based on the severity of symptoms, which "for a patient such as myself who's symptoms seem quite mild one year, might be in the critical situation the next." (*Id*.) He states he tested positive for Hepatitis-C in 2016, while in custody at the Riverside County Jail. (*Id*. at 9.) When he was subsequently transferred to the custody of the CDCR he was told not to worry about having tested positive because the virus can lie dormant for decades without manifesting symptoms and that one in six cases clear up on their own. (*Id*.) He complained of

symptoms shortly after arriving in CDCR custody, including chronic fatigue, aching muscles and constant throbbing back pain, but was told his liver was not damaged enough to qualify for treatment. (*Id*.)  He states he has filed 602-inmate appeals seeking treatment which were ignored or denied on the basis he either did not have Hepatitis-C or did not qualify for treatment, and was told that top priority for treatment went to inmates whose tests indicated a high level of liver damage. (*Id*. at 9-10.)  He also states that even those inmates who might qualify for treatment still have to "wade through" so many regulations and requirements that treatment can be effectively delayed indefinitely. (*Id*. at 10.)  He states "he should not be at the whim of the CDCR as to" whether he receives treatment, particularly since he is serving a life sentence. (*Id*.)

Plaintiff states he has addressed his concerns with Dr. Clayton over the past year and contends "he should have been given some type of treatment regardless of his test scores being low." (*Id*. at 11.)  The Complaint does not identify what treatment Plaintiff seeks or requested from Dr. Clayton and denied, but attached to the Complaint is a January 28, 2019, Headquarters' Level Response from Defendant Gates, the Chief of the California Correctional Health Care Services ("CCHCS") Policy & Risk Management Department in Sacramento, to Plaintiff's CDCR 602-Health Care Grievance seeking "HCV treatment." (ECF No. 1 at 46-47.)  That document states that "lab results completed February 12, 2018, indicates no detectable HCV viral load," that additional lab tests were performed on January 17, 2019, which "confirm that you do not test positive for any significant viral load, and therefore HCV treatment is not medically necessary," that Plaintiff is "enrolled in the Chronic Care Program where your medical conditions and medication needs are closely monitored," and that "California law directs your health care providers to offer and provide only the care they determine to be currently medically or clinically necessary for you, in accordance with appropriate policies and procedures." (*Id*.)

In April 2021, Plaintiff reported to Dr. Clayton that his urine was dark and brown, his stomach was bloated and he was fatigued on a daily basis. (*Id*. at 11.)  He "argued [with Dr. Clayton] about treatment & care," and Dr. Clayton told him: "I don't make the

6

rules Kakowski - you have to understand I'm just telling you how it is." (*Id*.)  Plaintiff told Dr. Clayton his symptoms must be due to exposure to inmates working in the kitchen not being properly medically screened and told Dr. Clayton to look into it.  (*Id*. at 12.)  On April 9, 2021, Plaintiff's blood score was "thru the roof" so Dr. Clayton sent him to an outside hospital for observation because "this way if you need a transplant or emergency they can assist you better than we can here at RJD."  (*Id*.)  He states that the doctor at the outside hospital told him "you need to be on the Hep C treatment."  (*Id*. at 13.)

Plaintiff seeks to hold Defendant Glynn, "the chief officer for CCHCS at RJD," and Dr. Clayton liable as "responsible for the policies, practices & regulations with regard to health care at RJD & CCHCS," which he contends are "ambiguous, arbitrary & objectively unreasonable," would not be tolerated in a non-prison setting, and are based on the determination that "death is cheaper than treatment for CDCR." (*Id*.)  He states that: "I feel I have been medically neglected on a continuous basis and left to endure constant pain and suffering," and that Dr. Clayton and the medical staff at RJD have willfully disregarded his right to treatment to the point he suffered liver damage and was rushed to a hospital. (*Id*. at 14.)  He seeks to hold Defendants Glynn and Gates liable for establishing and overseeing the policies and practices regarding medical care at RJD, contending that Gates is aware of these issues through 602-inmate appeals and Dr. Clayton is culpable for disregarding his right to treatment and for contributory negligence.  (*Id*. at 14-15.)  Plaintiff seeks an injunction preventing Defendants from violating his constitutional rights, a declaratory judgment that his rights were violated, and monetary damages.  (*Id*. at 18.)

Plaintiff attaches as exhibits to the Complaint copies of his 602-inmate grievances and health care service requests.  (*Id*. at 21-75; ECF No. 1-2 at 2.)  He has separately lodged additional exhibits indicating he may be transferred soon (ECF No. 6 at 2), along with a letter supporting parole by a correctional officer who attests to his good character (*id*. at 4), a note stating that on October 5, 2021, two weeks after he filed this action, he was told again that he did not qualify for Hepatitis-C treatment (ECF No. 8 at 2), a newspaper article about food poisoning in prisons (ECF No. 10 at 3), an appeal regarding disinfecting

procedures for telephones and showers to which it took over one and one-half years to receive a third level response (ECF No. 12 at 4-15), affidavits regarding ongoing issues in the RJD kitchen, including that correctional officers are aware inmates are having sex and using drugs in the kitchen, that several inmates have filed 602-inmate grievances on that issue, and that an inmate recently overdosed on heroin while at work in the kitchen (ECF No. 16 at 4-5; ECF No. 20 at 2), the affidavit of an inmate kitchen worker who says he was not medically cleared to work there and an inmate grievance filed by Plaintiff after he filed the instant Complaint expressing concern he might be transferred in retaliation for filing this action, with an October 8, 2021, response indicating he has not been recommended for transfer (ECF No. 18 at 2, 6-10), and a copy of the January 2021 Operational Plan regarding the daily schedule for inmates at RJD.  (ECF No. 22 at 2-13.)

## C.  Analysis

### 1.  Medical Care Claims

Prisoner medical care may amount to cruel and unusual punishment in violation of the Eighth Amendment when medical professionals are "deliberately indifferent" to an inmate's "serious" medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "Deliberate indifference 'may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.'" *Colwell v. Bannister,* 763 F.3d 1060, 1066 (9th Cir. 2014), quoting *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).

"[A] prison official violates the Eighth Amendment when two requirements are met. First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Second, Plaintiff must allege the prison official he seeks to hold liable had a "sufficiently culpable state of mind," that is, "one of 'deliberate indifference' to inmate health or safety." *Id.,* quoting *Wilson*, 501 U.S. at 302-03. "A difference of opinion between a physician and the prisoner - or between medical professionals - concerning what medical care is appropriate does not amount to deliberate indifference." *Colwell*, 763 F.3d at 1068.

Rather, a prison official can be held liable only if he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

With respect to the serious medical need prong of an Eighth Amendment claim, the allegations in the Complaint assert the lack of adequate Hepatitis-C treatment has resulted in Plaintiff experiencing pain and discomfort and being rushed to a hospital at a physician's direction are sufficient to survive screening required by 28 U.S.C. §§ 1915(e)(2) & 1915A(b). *Wilhelm*, 680 F.3d at 1123; *Iqbal*, 556 U.S. at 678; *Doty v. County of Lassen*, 37 F.3d 540, 546 n.3 (9th Cir. 1994) ("[I]ndicia of a 'serious' medical need include (1) the existence of an injury that a reasonable doctor would find important and worthy of comment or treatment, (2) the presence of a medical condition that significantly affects an individual's daily activities, and (3) the existence of chronic or substantial pain.")

The deliberate indifference prong of an Eighth Amendment violation "is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Allegations of inadequate medical treatment, medical malpractice, or even gross negligence by themselves do not rise to the level of an Eighth Amendment violation. *See Farmer*, 511 U.S. at 835 ("[N]egligen(ce) in diagnosing or treating a medical condition" does not amount to deliberate indifference), quoting *Estelle*, 429 U.S. at 106 (holding that inadvertent failure to provide medical care, mere negligence or medical malpractice and differences of opinion over what medical treatment is proper, do not state an Eighth Amendment claim). Deliberate indifference can be shown where the chosen course of medical treatment was "medically unacceptable under the circumstances" and chosen "in conscious disregard of an excessive risk to the prisoner's health." *See Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004).

The Complaint, as drafted, alleges that Plaintiff disagrees with the course of treatment provided by Defendant Dr. Clayton, his treating physician, and that Dr. Clayton

9

told Plaintiff the treatment he is receiving is constrained by the policies and procedures allegedly controlled or implemented by the other Defendants.   Plaintiff alleges those Defendants, CDCR Secretary Allison, RJD Warden Pollard, RJD Chief Executive Officer Glynn, and Chief of CCHCS Risk Management Gates, are responsible for the implementation of CCHCS policies and practices which preclude treatment for Hepatitis-C until viral load test scores are elevated or severe symptoms occur, such as liver failure. Although nowhere in the Complaint does Plaintiff indicate what treatment he contends he should be receiving but is not, the January 28, 2019, CCHCS Headquarters' Level Response from Defendant Gates to Plaintiff's CDCR 602-Health Care Grievance seeking "HCV treatment," which is attached to the Complaint as an exhibit, indicates that "lab results completed February 12, 2018, indicates no detectable HCV viral load," that additional lab tests were performed on January 17, 2019, which "confirm that you do not test positive for any significant viral load, and therefore HCV treatment is not medically necessary," that Plaintiff is "enrolled in the Chronic Care Program where your medical conditions and medication needs are closely monitored," and that "California law directs your health care providers to offer and provide only the care they determine to be currently medically or clinically necessary for you, in accordance with appropriate policies and procedures." (ECF No. 1 at 46-47.)  Thus, under a liberal construction of the Complaint, Plaintiff claims that CCHCS policies providing that he can only receive treatment for Hepatitis-C when his test scores for viral load are high or he is in acute distress, and the failure to provide him with "HCV treatment" at other times, amounts to deliberate indifference to his serious medical needs.

Plaintiff's allegation that Dr. Clayton told him the course of treatment he was receiving could not be altered due to the policies of RJD, CDCR or CCHCS, and that Dr. Clayton was unable to provide treatment due to those policies because Plaintiff's medical test scores were too low, fails to state a § 1983 claim against Dr. Clayton because the Complaint, as drafted, alleges that Dr. Clayton lacked the authority to provide different treatment.  *See Hines v. Youseff*, 914 F.3d 1218, 1236 (9th Cir. 2019) (finding that

defendants who had no discretion or authority relating to the alleged conduct could not be held liable for an Eighth Amendment violation because "[a]n official is liable under § 1983 only if 'culpable action, or inaction, is directly attributed to them.'"), quoting *Starr v. Baca*, 652 F.3d 1202, 1205 (9th Cir. 2011).  Plaintiff alleges that when he was sent to an outside hospital the doctor there told him "you need to be on the Hep C treatment."  (ECF No. 1 at 13.)  But there is no indication that doctor meant Plaintiff should have been receiving treatment prior to his having to be hospitalized, as opposed to at that moment needing the treatment available under CCHCS protocols.  Even if the Complaint is liberally construed to allege that a reasonable outside physician in a non-prison setting, or a reasonable prison physician unconstrained by the CCHCS policies, would have provided different ongoing treatment than what Dr. Clayton provided or was allowed to provide, the Complaint fails to identify what course of treatment Plaintiff requested from Dr. Clayton but was refused. And although the Complaint contains allegations that Plaintiff has or has had symptoms which include pain and discomfort, there are no allegations regarding what if any treatment he is currently receiving for those symptoms.  Rather, the Complaint and its exhibits indicate Plaintiff requested "HCV treatment" but was refused because under CCHCS policies his viral load test scores were too low for him to be eligible for that treatment.  As a result, the Complaint, as currently drafted, alleges a difference of medical opinion regarding the proper course of treatment caused by the criteria for treatment of Hepatitis-C determined by the CCHCS and implemented at RJD.  *See e.g. Edrosa v. Chau*, 19cv88-CAB (DEB), 2020 WL 7029916, at *1 & n.1 (S.D. Cal. Oct. 6, 2020) (finding that plaintiff's concession he was treated pursuant to CCHCS criteria for treatment of Hepatitis-C alleged a difference of medical opinion and failed to state a claim for deliberate indifference, and noting that the CCHCS criteria were established by a federal receiver in the ongoing class action of *Plata v. Schwarzenegger*, No. C01-1351-THE, 2005 WL 2932253, at *1 (N.D. Cal. Oct. 3, 2005) and plaintiff's challenge to those criteria should be addressed in that litigation), citing *Pride v. Correa*, 719 F.3d 1130 (9th Cir. 2013) (holding that plaintiff can maintain a claim for injunctive relief concerning individual

medical care only where the "claim is not already encompassed in the *Plata* litigation, which seeks systemic reform of medical care in California prisons.")   Plaintiff is not foreclosed from maintaining this action solely on his own behalf seeking relief based on the treatment he is receiving or has received, provided he sets forth factual allegations which plausibly allege that his individual treatment is constitutionally inadequate because it should but does not deviate from the CCHCS criteria established by the receiver in the *Plata* litigation, but he may not in this litigation duplicate the allegations and prayer for relief in *Plata* regarding the systemic challenge to CDCR healthcare.  *Id*.; *see also Burnett v. Dugan*, 618 F.Supp.2d 1232, 1235-37 (S.D. Cal. 2009) (taking judicial notice of the *Plata* litigation and rejecting defendant's contention that plaintiff is automatically precluded from seeking injunctive relief for his own medical treatment without first seeking relief as a member of the *Plata* class).

Plaintiff's Eighth Amendment claim against Dr. Clayton for deliberate indifference to his serious medical needs for failure to provide an adequate course of treatment for his Hepatitis-C fails to state a claim upon which relief may be granted because, as currently drafted, the Complaint merely alleges the treatment Dr. Clayton has or has not provided is based on the CCHCS criteria, which Plaintiff alleges is constitutionally inadequate because it requires waiting until an inmate's HCV viral load tests scores are so high or his liver is damaged that it is too late for effective treatment.  Plaintiff alleges Dr. Clayton had him rushed to the hospital when his viral load test scores were "thru the roof," but does not plausibly allege the course of treatment provided by Dr. Clayton was "medically unacceptable under the circumstances" because Dr. Clayton is alleged to have followed the CCHCS guidelines.  The Complaint does not plausibly allege that Dr. Clayton's following of those guidelines amounts to deliberate indifference to Plaintiff's serious medical needs because it does not plausibly allege Dr. Clayton was aware that a failure to deviate from those guidelines in Plaintiff's individual case was "medically unacceptable under the circumstances" and that Dr. Clayton *could have* but chose not to provide a different course of treatment "in conscious disregard of an excessive risk to the prisoner's health."  *Toguchi*,

391 F.3d at 1058.  Rather, as drafted, the Complaint alleges Plaintiff was treated by Dr. Clayton under CCHCS guidelines and had a medical disagreement with Dr. Clayton regarding whether those guidelines provide for adequate treatment.  *See Hollis v. Director of Corrections*, 560 F.Supp.2d 920, 926-927 (C.D. Cal. 2008) (allegations that prison medical staff denied treatment for Hepatitis-C because of CCHCS criteria amounted to a difference of medical opinion and did not state a § 1983 claim); *Youseff*, 914 F.3d at 1228 (medical personnel following mandatory criteria developed by others cannot be held liable under § 1983 for deliberate indifference to a prisoner's medical needs).  If Plaintiff wishes to proceed with an Eighth Amendment deliberate indifference claim against Dr. Clayton, he must, in addition to setting forth factual allegations which plausibly allege Dr. Clayton was aware that a different course of treatment was *available* and *necessary* to avoid a substantial risk to Plaintiff's health, set forth factual allegations which plausibly allege that Dr. Clayton, knowing of a substantial risk to Plaintiff's health by declining to provide such treatment, deliberately disregarded that risk when choosing the course of treatment which caused Plaintiff substantial harm.  *See Wood v. Housewright*, 900 F.2d 1332, 1334-35 (9th Cir. 1990) (a defendant must purposefully ignore or fail to respond to pain or medical needs and the delay must have "caused substantial harm.")

Plaintiff alleges that Defendants CDCR Secretary Allison and RJD Warden Pollard "have a constitutional and statutory responsibility for the" health of inmates at RJD, and "are responsible for ensuring their subordinates obeyed regulations & ordinances of both state & federal law."  (ECF No. 1 at 6.)  Supervisory liability is not an independent cause of action under § 1983, and Plaintiff must allege both an underlying constitutional violation and a connection between the supervisor's actions and the violation.  *See Starr*, 652 F.3d at 1207 ("A defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'"), quoting *Hansen v. Black*, 855 F.2d 642, 646 (9th Cir. 1989).

/ / /

Plaintiff may not simply attempt to hold the supervisory Defendants liable without any *factual* allegations regarding their personal involvement in the alleged constitutional violation or a causal connection between their wrongful conduct and the violation.  To the extent Plaintiff claims they are aware Dr. Clayton failed to deviate from the CCHCS guidelines through his inmate grievances, and assuming he alleges they have the authority to alter or decline to enforce CCHCS medical policies at RJD, as set forth above Plaintiff has not adequately alleged in this action that those policies have resulted in deliberate indifference to his serious medical needs, as opposed to challenging the policies themselves as unconstitutional which is precluded by the *Plata* litigation.  *Pride*, 719 F.3d at 1133-34; *see also Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) ("The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation."), citing *Rizzo v. Goode*, 423 U.S. 362, 370-71, 375-77 (1976).  If Plaintiff wishes to proceed with an Eighth Amendment claim against Defendant Secretary Allison and Warden Pollard he must set forth factual allegations which plausibly show they knew that failing to deviate from the CCHCS protocol for Hepatis-C treatment in Plaintiff's case posed a substantial risk to his health and deliberately disregarded that risk.  Merely alleging they are required to implement CDCR and CCHCS policies regarding Hepatitis-C treatment at RJD without allegations that they knew of and deliberately disregarded such a risk to Plaintiff fails to state an Eighth Amendment deliberate indifference claim.

With respect to Defendants Chief RJD Executive Officer Glynn and Chief Executive of CCHCS Risk Management Gates, the allegations against these Defendants are based on Plaintiff's allegation that Dr. Clayton was constrained in his treatment options by the policies and procedures these Defendants are allegedly responsible for.  However, Plaintiff does not set forth factual allegations which plausibly suggest Defendant Glynn was personally involved in his treatment or lack thereof, and merely provides a conclusory allegation that Glynn is responsible for implementation of the CCHCS protocol regarding Hepatitis-C treatment at RJD.  As with Defendants Allison and Pollard, there are no factual

allegations Glynn was aware of and deliberately disregarded a substantial risk of serious harm to Plaintiff by the implementation of those protocols.

With respect to Defendant Gates, Plaintiff attaches to his Complaint a January 28, 2019, CCHCS Headquarters' Level Response to his CDCR 602-Health Care Grievance in which Defendant Gates states that "lab results completed February 12, 2018, indicates no detectable HCV viral load," that additional lab tests were performed on January 17, 2019, which "confirm that you do not test positive for any significant viral load, and therefore HCV treatment is not medically necessary." (ECF No. 1 at 46.) That document indicates that Plaintiff is "enrolled in the Chronic Care Program where your medical conditions and medication needs are closely monitored," and that "California law directs your health care providers to offer and provide only the care they determine to be currently medically or clinically necessary for you, in accordance with appropriate policies and procedures." (*Id.* at 47.) Even to the extent Plaintiff contends Defendant Gates was or should have been aware through his health care grievance that the CCHCS protocols requiring high viral load test results to appear before treatment is provided renders it too late for effective treatment, as discussed above, such a challenge merely to the protocols themselves is foreclosed.

If Plaintiff wishes to proceed with an Eighth Amendment deliberate indifference claim against any Defendant he must set forth factual allegations which plausibly allege there were treatment options he could benefit from which were not available to him due to the actions of the Defendants, as distinct from simply challenging the adoption and implementation of the CCHCS protocols developed by the receiver in the *Plata* litigation. *See Pride*, 719 F.3d at 1133-34 (noting that Rule 12(b)(6) permits dismissal of "those portions of (the) complaint which duplicate the (class action's) allegation and prayer for relief," but not "those allegations of (the) complaint which go beyond the allegations and relief prayed for in (the class action.)"), quoting *Crawford v. Bell*, 599 F.2d 890, 892-93 (9th Cir. 1979); *Watison*, 668 F.3d at 1112 ("The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2) (B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to

state a claim."); *Wilhelm*, 680 F.3d at 1121 (noting that § 1915A screening "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)."); *Hollis*, 560 F.Supp.2d at 926-27 (allegations that prison medical staff denied treatment for Hepatitis-C because of CCHCS criteria amounted to a difference of medical opinion and did not state a § 1983 claim); *Youseff*, 914 F.3d at 1228 (medical personnel following mandatory criteria developed by others cannot be held liable under § 1983 for deliberate indifference to a prisoner's medical needs).

## 2. Failure to Protect Claims

Plaintiff alleges in claim one of the Complaint that he re-contracted Hepatitis-C as a direct result of the failure of Defendants CDCR Secretary Allison and RJD Warden Pollard to adhere to prison guidelines, protocols and policies in failing to ensure that inmates who work with food are "medically cleared," and by "allowing high risk medical [inmates] with Hepatitis, AIDS, etc. to be volunteers working in and around our food & or kitchen." (ECF No. 1 at 4.) Plaintiff "is holding Dr. Clayton accountable as Dr. failed to adhere, investigate or look into acts of deliberate indifference when Plaintiff told Clayton Hep C was recontracted due to him not doing proper medical tests of [inmates] working in the kitchen - once telling Clayton of situation Clayton brushed it off, as if not his problem?" (*Id*. at 7.)

"[T]he Supreme Court has treated medical care claims substantially the same as other conditions of confinement violations including failure-to-protect claims." *Gordon v. County of Orange*, 888 F.3d 1118, 1124 (9th Cir. 2018), citing *Wilson*, 501 U.S. at 303 ("Indeed, the medical care a prisoner receives is just as much a 'condition' of his confinement as . . . the protection he is afforded against other inmates.") Prison officials may be held liable under the Eighth Amendment for a failure to protect prisoners only where the official shows a deliberate indifference to conditions which pose a substantial risk of serious harm to an inmate. *Farmer*, 511 U.S. at 833. A prison official can be held liable only if he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

16

1     In other words, the Eighth Amendment is violated when a prison official, acting with
2     deliberate indifference, exposed Plaintiff to a sufficiently "substantial risk of serious harm"
3     to his health.  *Id.* at 843, citing *Helling v. McKinney*, 509 U.S. 25, 35 (1993) (stating that
4     in order to allege an Eighth Amendment violation for exposure to second-hand tobacco
5     smoke, a prisoner must identify a defendant who is alleged to know of and deliberately
6     disregard an unreasonable risk of serious damage to his future health).

7          Plaintiff alleges he re-contracted Hepatitis-C as a result of the failure to test inmates
8     working in the kitchen for diseases.  He presents, as exhibits to his Complaint, his own
9     affidavit and the affidavit of another inmate stating that kitchen workers have sex in the
10    kitchen bathroom and use drugs (ECF No. 16 at 4-5; ECF No. 20 at 2), an affidavit from
11    an inmate kitchen worker who says he has worked in the kitchen for "approximately three
12    months" and "did not have to forego any medical clearance to become a kitchen volunteer"
13    (ECF No. 18 at 2), as well as a newspaper article which attributes a percentage of food-
14    borne illnesses in prisons to "infected inmates" handling food without identifying the
15    nature of their infections.  (ECF No. 10 at 3.)  Plaintiff alleges Defendants Secretary Allison
16    and Warden Pollard were or should have been aware of the danger posed from the lack of
17    testing of kitchen workers for diseases through the inmate grievances filed by himself and
18    other inmates, and that he asked Dr. Clayton to investigate because Plaintiff suspects his
19    Hepatitis-C symptoms reoccurred as a result of the failure to test kitchen workers.
20    However, the Complaint, as drafted, fails to contain factual allegations which, if true,
21    plausibly show that any Defendant knew of and deliberately disregarded a substantial risk
22    to inmate health and safety.  For example, there are no factual allegations which plausibly
23    suggest the failure to test inmates by itself created a risk of harm to inmate health which
24    was obvious, such as factual allegations that the lack of inmate testing has in fact caused
25    food contamination, or why such testing is the only effective method to prevent food
26    contamination, such as, for example, a failure to have in place or implement sanitation
27    methods in the kitchen which effectively prevent food contamination.  *See Farmer*, 511
28    U.S. at 842 (noting that "a factfinder may conclude that a prison official knew of a

substantial risk from the very fact that the risk was obvious."); *Helling*, 509 U.S. at 36 (the Eighth Amendment requires a showing of actual or potential injury arising from unhealthy conditions of confinement and an assessment of whether "the risk that the prisoner complains of [is] so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk.")

If Plaintiff wishes to proceed with an Eighth Amendment failure to protect claim, based on allegations that RJD food service presents a substantial risk to his health, he must present *facts* which plausibly allege Defendants are aware of a grave risk to inmate health from unsafe or unsanitary kitchen conditions and, aware of that risk, have deliberately disregarded it by failing to put into place or ensure compliance with procedures to ensure inmates receive safe food service. *See Farmer*, 511 U.S. at 835 ("deliberate indifference describes a state of mind more blameworthy than negligence" and "more than ordinary lack of due care for the prisoner's interests or safety.")

### 3. Equal Protection Claims

Finally, Plaintiff claims that his right to equal protection under the Fourteenth Amendment was violated by the actions of the Defendants as described throughout the Complaint.  The Equal Protection Clause of the Fourteenth Amendment requires persons who are similarly situated to be treated alike.  *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985).  To state an equal protection claim Plaintiff must set forth facts which plausibly allege Defendants intentionally discriminated against him based on his membership in a protected class.  *Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013); *Maynard v. City of San Jose*, 37 F.3d 1396, 1404 (9th Cir. 1994) ("Intentional discrimination means that a defendant acted at least in part *because of* a plaintiff's protected status.")  To the extent Plaintiff claims he is receiving different medical treatment than persons who are not incarcerated, "neither prisoners nor 'persons convicted of crimes' constitute a suspect class for equal protection purposes."  *United States v. Whitlock*, 639 F.3d 935, 941 (9th Cir. 2011), quoting *Glauner v. Miller*, 184 F.3d 1053, 1054 (9th Cir. 1999).

21cv1675-JAH (RBM)

An equal protection claim can also be brought under a theory other than class-based discrimination, through a "class of one" claim, which requires a showing that Defendants intentionally treated Plaintiff differently than similarly situated individuals and that there was not a rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 601-02 (2008) ("[W]hen it appears that an individual is being singled out by the government, the specter of arbitrary classification is fairly raised, and the Equal Protection Clause requires a 'rational basis for the difference in treatment.'"), quoting *Olech*, 528 U.S. at 564. There are no allegations in the Complaint that Plaintiff is being treated differently than anyone else. And although Plaintiff alleges in a conclusory manner that CCHCS policies regarding Hepatitis-C treatment are arbitrary, his Complaint contains no factual allegations which plausibly suggest Defendants' refusal to deviate from the CCHCS treatment protocols regarding his Hepatitis-C treatment lacked a rational basis. Neither are there any factual allegations that Plaintiff is treated any differently than any other inmate with respect to the failure to test inmates who work in the kitchen for diseases. Accordingly, the Complaint fails to state a claim for denial of equal protection.

### D.    Leave to Amend

In light of Plaintiff's pro se status, the Court grants him leave to amend his pleading to attempt to sufficiently allege a § 1983 claim if he can and if he wishes to attempt to do so. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend [pursuant to 28 U.S.C. § 1915(e)(2)] unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'"), quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012).

### E.    Motion to Appoint Counsel

Plaintiff requests appointment of counsel due to the factual and legal complexity of this case and his limited ability to investigate what he anticipates will be conflicting testimony of CDCR officials. (ECF No. 24 at 3.) All documents filed pro se are liberally construed, and "a *pro se* complaint, however inartfully pleaded, must be held to less

stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), quoting *Estelle*, 429 U.S. at 106.  There is no constitutional right to counsel in a civil case, and the decision to appoint counsel under 28 U.S.C. § 1915(e)(1) is within "the sound discretion of the trial court and is granted only in exception circumstances." *Agyeman v. Corr. Corp. of America*, 390 F.3d 1101, 1103 (9th Cir. 2004); *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991) (noting that only "exceptional circumstances" support such a discretionary appointment).  Exceptional circumstances exist where there is cumulative showing of both a likelihood of success on the merits and an inability of the pro se litigant to articulate his claims in light of their legal complexity. *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009).

Plaintiff's Complaint demonstrates that while not formally trained in law, he is fully capable of legibly articulating the facts and circumstances relevant to his claims and has yet to show he is likely to succeed on the merits of his claims.  Accordingly, the Court **DENIES** Plaintiff's motion for appointment of counsel without prejudice.

### III.   Conclusion and Orders

Good cause appearing, the Court:

1.   **GRANTS** Plaintiff's Motion to Proceed IFP (ECF No. 2).

2.   **ORDERS** the Secretary of the CDCR, or her designee, to collect from Plaintiff's prison trust account the $350 filing fee owed by collecting monthly payments from Plaintiff's account in an amount equal to twenty percent (20%) of the preceding month's income and forwarding those payments to the Clerk of the Court each time the amount in the account exceeds $10 pursuant to 28 U.S.C. Section 1915(b)(2).   All payments should be clearly identified by the name and number assigned to this action.

3.   **DIRECTS** the Clerk of the Court to serve a copy of this Order on Kathleen Allison, Secretary, California Department of Corrections and Rehabilitation, P.O. Box 942883, Sacramento, California 94283-0001.

4.   **DISMISSES** all claims against all Defendants in the Complaint without prejudice and with leave to amend pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b).

5.    **DENIES** Plaintiff's Motion to Appoint Counsel without prejudice (ECF No. 24).

6.    **GRANTS** Plaintiff forty-five (45) days leave from the date of this Order in which to file a First Amended Complaint which cures the deficiencies of pleading noted in this Order with respect to any or all other Defendants.  Plaintiff's First Amended Complaint must be complete by itself without reference to his original Complaint.  Defendants not named and any claims not re-alleged in the First Amended Complaint will be considered waived.  *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.")  If Plaintiff fails to amend, the Court will dismiss this action for failure to state a claim and failure to prosecute.  *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.")

7.    **DIRECTS** the Clerk of the Court to provide Plaintiff with a blank copy of its form Complaint under the Civil Rights Act, 42 U.S.C. § 1983 for use in amending if he should choose to do so.

**IT IS SO ORDERED.**

Dated: December 21, 2021

Hon. John A. Houston
United States District Court