UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN KAKOWSKI,<br>CDCR #BF-3315,<br><br>                            Plaintiff,<br><br>vs.<br><br>KATHLEEN ALLISON, Secretary of the California Department of Corrections and Rehabilitation, et al.,<br><br>                          Defendants. | Case No.: 21cv1675-JAH (RBM)<br><br>**ORDER:**<br><br>**(1) DISMISSING ALL CLAIMS AGAINST ALL DEFENDANTS EXCEPT POLLARD, CLAYTON AND MOSELY PURSUANT TO 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b), and**<br><br>**(2) DIRECTING U.S. MARSHAL TO EFFECT SERVICE ON DEFENDANTS POLLARD, CLAYTON AND MOSELY** |

On September 22, 2021, Plaintiff Brian Kakowski, a state prisoner incarcerated at the Richard J. Donovan Correctional Facility ("RJD") in San Diego, California, proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983.  (ECF No. 1.)  Plaintiff claimed his Fourteenth Amendment right to equal protection and his Eighth Amendment right to be free from cruel and unusual punishment were violated because treatment for Hepatitis-C at RJD is delayed until symptoms become severe enough to cause permanent liver damage, and his Hepatitis-C was in remission until he re-contracted it as a result of inmates handling food who are not tested for communicable diseases.  (*Id.* at 4-15.)

Plaintiff filed a Motion to Proceed In Forma Pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a). (ECF Nos. 2, 4.) He also filed a Motion to Appoint Counsel (ECF No. 24), and exhibits in support of the Complaint. (ECF Nos. 6, 10, 12, 16, 18, 20, 22, 26, 28 and 31.)

On December 21, 2021, the Court granted Plaintiff leave to proceed in forma pauperis, denied his request for counsel, and screened the Complaint pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b), which require the Court to *sua sponte* dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. (ECF No. 29.) The Court found the Complaint as drafted failed to state a claim, notified Plaintiff of the pleading requirements and deficiencies of his claims, and dismissed the Complaint with leave to amend. (*Id*. at 8-19.)

Plaintiff has now filed a First Amended Complaint ("FAC"). (ECF No. 32.)

## I.  Screening pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b)

### A.  Standard of Review

Because Plaintiff is a prisoner and is proceeding IFP, his FAC requires a pre-Answer screening pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b). Under these statutes, the Court must *sua sponte* dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of § 1915A is to ensure that the targets of frivolous or malicious suits need not bear the expense of responding." *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (internal quote marks omitted).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that § 1915A screening "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).") Rule

12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*

Title 42 U.S.C. § 1983 "creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal quotation marks omitted). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

### B. Allegations in the FAC

Plaintiff alleges in count one of the FAC that Defendants California Department of Corrections and Rehabilitation ("CDCR") Secretary Kathleen Allison, RJD Warden Marcus Pollard, Plaintiff's primary treating physician at RJD Dr. Clayton, and M. Mosely, the Chief Appeals Officer of the CDCR, failed to protect him and were deliberately indifferent to his health and safety in violation of equal protection and the prohibition against cruel and unusual punishment under the Eighth and Fourteenth Amendments. (ECF No. 32 at 6.) Plaintiff alleges these Defendants failed to enforce California Code of Regulations, Title 15, § 3052(g), a copy of which he attaches to the FAC, which provides: "No inmate shall be assigned to the food service area until medically cleared to handle

food." (*Id*. at 4; ECF No. 32-1 at 9.) He claims that as a result of their failure to enforce that regulation, inmates with contagious diseases are working in the kitchens contaminating food, which "led to Plaintiff re-contracting Hepatitis-C." (*Id*.) Plaintiff alleges these Defendants are allowing their subordinates free reign with little or no oversight to permit inmates to volunteer in the kitchens without medical clearance, which is the moving force behind the ongoing constitutional violation. (*Id*.) He alleges Defendant Pollard personally participated in the violation when Pollard, rather than investigate his complaint, denied his inmate grievance on the issue by stating, in direct violation of the California regulations, that "inmates are not precluded from holding a position in culinary based on medical prognosis." (*Id*. at 5; ECF No. 1 at 24.) Plaintiff claims that as a result inmates on the high-risk medical yard are allowed to work in the kitchens without being medically cleared as required by prison regulations, causing unsafe and unsanitary conditions in the kitchens. (ECF No. 32 at 5.)

Plaintiff claims Defendant Mosely "made false claims and falsified documents claiming chronos are up to date, everybody & everyone is medically cleared," which Plaintiff alleges is proven false by the declaration of a kitchen worker attached to the FAC and other documents and declarations he can present, and by the lack of documentation in possession of Defendants showing the regulations are being followed. (*Id*. at 6-7; ECF No. 32-2 at 2-3.) He states that he told Dr. Clayton during one of their visits that Dr. Clayton had a duty "to look into why inmates with AIDS & Hepatitis are not being properly screened prior to being assigned to the kitchens here at RJD," and that Dr. Clayton was not following the regulations and not investigating the violations which have been documented. (ECF No. 32 at 8.)

In count two of the FAC, Plaintiff claims Defendant Dr. Clayton was deliberately indifferent to his need for medical treatment of Hepatitis-C in violation of the Eighth Amendment which has resulted in liver damage. (*Id*. at 9.) Plaintiff alleges his requests for Hepatitis-C treatment and Interferon were "met with Tums & Ibuprofen - and I'm told to drink a lot of water." (*Id*. at 8.) He alleges he requested Interferon as a treatment "or

whatever I thought he recommended - and all I was given - and still to this day are given is Tums & Ibuprofen." (*Id*. at 9.) He states that he has "been ignored which led me to be rushed to the hospital in April 2021" with acute liver failure. (*Id*.) Plaintiff claims he has documentation showing Dr. Clayton was aware that his failure to follow policies and procedures at RJD exposed Plaintiff to being re-infected with Hepatitis-C. (*Id*. at 9-10.)

Plaintiff alleges that on December 27, 2021, as Dr. Clayton walked by, Plaintiff told him that he was still having issues with Hepatitis-C treatment, that he could feel his liver was not right because he was bloated and could not bend down at times, and would like to avoid another trip to the hospital, but Dr. Clayton told him he was no longer his physician, said: "I'm not in the business of helping people who are trying to sue me," and walked away. (*Id*. at 14.) Plaintiff claims Dr. Clayton ignored signs of liver failure reported by Plaintiff, including dark brown urine, stomach pain and back aches, but "time and time again I was ignored." (*Id*. at 10.) He claims he could have been treated with Interferon or Ribavirin by Dr. Clayton for over a year before his liver failure. (*Id*.)

Plaintiff states that he seeks to hold Defendants Dr. S. Roberts, the Chief Medical Executive at RJD, M. Glynn, the Chief Executive Officer of the California Correctional Health Care Services ("CCHCS"), and S. Gates, the Chief of Policy and Risk Management for CCHCS, "accountable for their inaction to my requests which have attributed to deliberate indifference to my medical needs." (*Id*. at 11.) He claims all three Defendants, along with Defendant Secretary Allison, "are the policy makers with regard to" the actions of the CCHCS and CDCR and became liable when they read and disregarded his "cry for help through the grievance process." (*Id*.) He contends that denial of treatment is a de facto policy of RJD, CCHCS and CDCR. (*Id*. at 13.)

Finally, Plaintiff claims his right to equal protection has been violated because his cellmate is being treated with a synthetic heroin called Suboxone because he was a heroin user, which allows him to have his Hepatitis treated with a drug called Harvoni, but Plaintiff is not entitled to be prescribed Harvoni because he was never a heroin user and is not prescribed Suboxone. (*Id*. at 13.)

C. Analysis

1. Eighth Amendment Claims

Prisoner medical care may amount to cruel and unusual punishment in violation of the Eighth Amendment when medical professionals are "deliberately indifferent" to an inmate's "serious" medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "Deliberate indifference 'may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.'" *Colwell v. Bannister,* 763 F.3d 1060, 1066 (9th Cir. 2014), quoting *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).

"[A] prison official violates the Eighth Amendment when two requirements are met. First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Second, Plaintiff must allege the prison official he seeks to hold liable had a "sufficiently culpable state of mind," that is, "one of 'deliberate indifference' to inmate health or safety." *Id.,* quoting *Wilson*, 501 U.S. at 302-03. "A difference of opinion between a physician and the prisoner - or between medical professionals - concerning what medical care is appropriate does not amount to deliberate indifference." *Colwell*, 763 F.3d at 1068. Rather, a prison official can be held liable only if he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; see also *Gordon v. County of Orange*, 888 F.3d 1118, 1124 (9th Cir. 2018) ("[T]he Supreme Court has treated medical care claims substantially the same as other conditions of confinement violations including failure-to-protect claims.")

With respect to the serious medical need prong of an Eighth Amendment claim, the allegations in the Complaint that the lack of adequate Hepatitis-C treatment has resulted in Plaintiff experiencing liver failure and being rushed to a hospital are sufficient to survive screening required by 28 U.S.C. §§ 1915(e)(2) & 1915A(b). *Wilhelm*, 680 F.3d at 1123;

*Iqbal*, 556 U.S. at 678; *Doty v. County of Lassen*, 37 F.3d 540, 546 n.3 (9th Cir. 1994) ("[I]ndicia of a 'serious' medical need include (1) the existence of an injury that a reasonable doctor would find important and worthy of comment or treatment, (2) the presence of a medical condition that significantly affects an individual's daily activities, and (3) the existence of chronic or substantial pain.")

The deliberate indifference prong of an Eighth Amendment violation "is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Allegations of inadequate medical treatment, medical malpractice, or even gross negligence by themselves do not rise to the level of an Eighth Amendment violation. *See Farmer*, 511 U.S. at 835 ("[N]egligen(ce) in diagnosing or treating a medical condition" does not amount to deliberate indifference), quoting *Estelle*, 429 U.S. at 106 (holding that inadvertent failure to provide medical care, mere negligence or medical malpractice and differences of opinion over what medical treatment is proper, do not state an Eighth Amendment claim). Deliberate indifference can be shown where the chosen course of medical treatment was "medically unacceptable under the circumstances" and chosen "in conscious disregard of an excessive risk to the prisoner's health." *See Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004).

The allegations in the FAC against Defendant Dr. Clayton, Plaintiff's treating physician, that he was aware of and covered up the failure to medically clear inmates from handling food which resulted in Plaintiff being reinfected with Hepatitis-C, and that he provided Plaintiff with "Tums & Ibuprofen" and told him to drink water and refused Interferon, Ribavairin or any other treatment in response to being informed by Plaintiff of his symptoms of liver failure, and ignored those symptoms which led to hospitalization and liver failure, survive the "low threshold" set for sua sponte screening pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b) with respect to an Eighth Amendment claim. *Farmer*, 511 U.S. at 834; *Iqbal*, 556 U.S. at 678. Plaintiff is entitled to have the U.S. Marshal effect service of the summons and his FAC on his behalf against Defendant Dr. Clayton. *See* 28 U.S.C.

§ 1915(d) ("The officers of the court shall issue and serve all process, and perform all duties in [IFP] cases."); Fed. R. Civ. P. 4(c)(3) ("[T]he court may order that service be made by a United States marshal or deputy marshal . . . if the plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915.")  However, Plaintiff is cautioned that the sua sponte screening process is "cumulative of, not a substitute for, any subsequent [motion to dismiss] that the defendant may choose to bring." *Teahan v. Wilhelm*, 481 F.Supp.2d 1115, 1119 (S.D. Cal. 2007).

Plaintiff has also adequately alleged Defendants Pollard and Mosely were personally involved in the alleged constitutional violation.  He alleges Pollard personally responded to a grievance complaining of the failure to follow the regulation requiring medical clearance of inmate kitchen workers by falsely stating that there is no such requirement, and that Mosely falsified documents to show that inmates were medically cleared.  Those allegations are sufficient to survive screening.  *See Snow v. McDaniel*, 681 F.3d 978, 989 (9th Cir. 2012) (review of inmate grievance by warden and associate warden was sufficient to show they were aware that inmate had a serious medical need and *failed to act* to prevent further harm) (emphasis added), overruled on other grounds, *Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014); *Farmer*, 511 U.S. at 834; *Iqbal*, 556 U.S. at 678.  Plaintiff is entitled to have the U.S. Marshal effect service of the summons and his FAC on his behalf against Defendants Pollard and Mosely.  28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3).

With respect to the remaining claims against the remaining Defendants, however, sua sponte dismissal is required because Plaintiff has once again failed to state a claim against them for the same reasons set forth in the Court's previous Order dismissing the original Complaint.  The FAC alleges Defendants CDCR Secretary Allison, RJD Chief Medical Executive Dr. S. Roberts, RJD Chief Executive Officer Glynn, and Chief of CCHCS Risk Management Gates are responsible for the implementation of the regulations at RJD, and that they have allowed the people who are responsible for following and implementing those regulations to violate them by failing to adequately supervise those individuals.  Supervisory liability is not an independent cause of action under § 1983, and

Plaintiff must allege both an underlying constitutional violation *and* a connection between the supervisor's actions and the violation. *See Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) ("A defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'"), quoting *Hansen v. Black*, 855 F.2d 642, 646 (9th Cir. 1989); *see also Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) ("The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation."), citing *Rizzo v. Goode*, 423 U.S. 362, 370-71, 375-77 (1976).

Plaintiff may not simply attempt to hold the supervisory Defendants liable without any factual allegations regarding their personal involvement in the alleged constitutional violation or a causal connection between their wrongful conduct and the violation. Unlike the allegation that Defendant Pollard personally responded to the grievance with a false assertion that no regulation prevented inmates with contagious diseases from working in the kitchens, and that Defendant Mosely falsified documents to show that inmates were medically cleared, Plaintiff's allegations against Defendants Allison, Roberts, Glynn and Gates are that they reviewed his grievances at higher levels and were responsible for failing to react and stop their subordinates from committing the alleged constitutional violation. There are no factual allegations in the FAC which plausibly suggest that by simply reviewing the lower level responses to his grievances, which Plaintiff contends were falsified by Pollard and Mosely to show there were no violations, they actually drew an inference Plaintiff faced a substantial risk to his safety, unlike Pollard and Mosely who are plausibly alleged to have actual knowledge of such a risk by personally participating in the grievance process with knowingly false assertions and falsified documents to ensure the complaints were not investigated and there would be no intervention. *See e.g. May v. Williams*, 10cv576-GMN-LRL, 2012 WL 1155390, at *3 (D. Nev. Apr. 4, 2012) ("Holding a prison official personally responsible for damages simply because he is familiar with a

prisoner's circumstances through direct communications with the prisoner and through communications with his subordinates is such a broad theory of liability that it is inconsistent with the personal responsibility requirement for assessing damages against public officials in a 42 U.S.C. § 1983 suit."); *Starr*, 652 F.3d at 1216 ("First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.  Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.")

Accordingly, the Court *sua sponte* dismisses all Eighth Amendment claims in the FAC against Defendants Allison, Roberts, Glynn and Gates based on a failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2). *Watison*, 668 F.3d at 1112; *Farmer*, 511 U.S. at 837.  Because Plaintiff was informed of these same deficiencies of pleading with respect to these same Defendants in the Court's prior Order of dismissal and has once again failed to state a claim against them, it is now clear Plaintiff cannot cure those pleading defects and the dismissal is without further leave to amend. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'"), quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012).

**2. Equal Protection Claim**

Finally, Plaintiff claims that his right to equal protection under the Fourteenth Amendment was violated because his cellmate is having his Hepatitis treated with Harvoni which Plaintiff is not allowed to receive because, unlike his cellmate who is also being treated with a synthetic heroin called Suboxone because he was a heroin user, Plaintiff is not prescribed Harvoni because he is not taking Suboxone because he was never a heroin user.  (*Id*. at 13.)  Plaintiff was instructed in the Court's prior Order of dismissal that the Equal Protection Clause of the Fourteenth Amendment requires persons who are similarly

situated to be treated alike. *City of Cleburne v. Cleburne Living Center, Inc*., 473 U.S. 432, 439 (1985). To state an equal protection claim Plaintiff must set forth facts which plausibly allege Defendants intentionally discriminated against him based on his membership in a protected class. *Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013); *Maynard v. City of San Jose*, 37 F.3d 1396, 1404 (9th Cir. 1994) ("Intentional discrimination means that a defendant acted at least in part *because of* a plaintiff's protected status.") Plaintiff was instructed that "neither prisoners nor 'persons convicted of crimes' constitute a suspect class for equal protection purposes." *United States v. Whitlock*, 639 F.3d 935, 941 (9th Cir. 2011), quoting *Glauner v. Miller*, 184 F.3d 1053, 1054 (9th Cir. 1999). Plaintiff was also instructed that in order to state an equal protection claim under a "class of one" theory, he must allege he was treated differently than similarly situated individuals and that there was not a rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Engquist v. Oregon Dep't of Agric*., 553 U.S. 591, 601-02 (2008) ("[W]hen it appears that an individual is being singled out by the government, the specter of arbitrary classification is fairly raised, and the Equal Protection Clause requires a 'rational basis for the difference in treatment.'"), quoting *Olech*, 528 U.S. at 564.

There are no allegations in the Complaint that Plaintiff is being treated differently than anyone similarly situated to himself or that he is treated differently based on his membership in a protected class. He states that his cellmate is entitled to be treated with Harvoni because he is also receiving Suboxone due to his heroin use, but Plaintiff is not allowed to be prescribed Harvoni because he is not taking Suboxone because he was never a heroin user. Plaintiff has once again failed to allege he is the member of a protected class, and because he has a different medical condition and different medical needs he has once again failed to allege he is being treated differently than someone to whom he is similarly situated, and there are once again no allegations that the difference in treatment lacks a rational basis. Accordingly, the FAC fails to state a claim for denial of equal protection for the same reasons the original Complaint failed to state such a claim.

Because Plaintiff was informed of the same deficiencies of pleading with respect to his equal protection claim in the Court's prior Order of dismissal and has once again failed to state a claim, and it is now clear Plaintiff cannot cure the pleading defects, the dismissal is without further leave to amend.  *Rosati*, 791 F.3d at 1039.

### III.   Conclusion and Orders

Good cause appearing, the Court:

1. **DISMISSES** all claims against all Defendants in Plaintiff's First Amended Complaint without further leave to amend pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b) with the exception of Plaintiff's Eighth Amendment claims against Defendants Pollard, Clayton and Mosely.

2. **DIRECTS** the Clerk to issue a summons as to Plaintiff's First Amended Complaint (ECF No. 32) for Defendants Pollard, Clayton and Mosely and forward it to Plaintiff along with a blank U.S. Marshal Form 285 for these Defendants.  The Clerk will provide Plaintiff with certified copies of his First Amended Complaint and the summons so that he may serve Defendants.  Upon receipt of this "In Forma Pauperis Package," Plaintiff must complete the USM Form 285s as completely and accurately as possible, *include an address where Defendants may be found and/or subject to service* pursuant to S.D. Cal. CivLR 4.1(c), and return them to the United States Marshal according to the instructions the Clerk provides in the letter accompanying the In Forma Pauperis Package.

3. **ORDERS** the U.S. Marshal to serve a copy of the First Amended Complaint and summons upon Defendants Pollard, Clayton and Mosely as directed by Plaintiff on the USM Form 285s provided to him.  All costs of that service will be advanced by the United States.  *See* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3).

4. **ORDERS** Defendants, once served, to reply to Plaintiff's First Amended Complaint and any subsequent pleading Plaintiff files in this matter in which Defendants are named as parties within the time provided by the applicable provisions of Federal Rules of Civil Procedure 12(a) and 15(a)(3).  *See* 42 U.S.C. § 1997e(g)(2) (while Defendants may occasionally be permitted to "waive the right to reply to any action brought by a prisoner

confined in any jail, prison, or other correctional facility under section 1983," once the Court has conducted its sua sponte screening Defendants are required to respond).

5. **ORDERS** Plaintiff, after service has been effected by the U.S. Marshal, to serve upon Defendants, or if appearance has been entered by counsel, upon Defendants' counsel, a copy of every further pleading, motion, or other document submitted for the Court's consideration pursuant to Fed. R. Civ. P. 5(b). Plaintiff must include with every original document he seeks to file with the Clerk a certificate stating the manner in which a true and correct copy of that document was served on Defendants or their counsel, and the date of that service. *See* S.D. Cal. CivLR 5.2. Any document received by the Court which has not been properly filed with the Clerk or which fails to include a Certificate of Service upon a Defendant, or their counsel, may be disregarded.

**IT IS SO ORDERED.**

Dated: February 14, 2022

_____
Hon. John A. Houston
United States District Judge