UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN KAKOWSKI,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>KATHLEEN ALLISON, et al.,<br><br>　　　　　　　　　　Defendants. | Case No.: 21-cv-01675-JAH-JLB<br><br>**ORDER:**<br><br>**(1) DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR NEUTRAL EXPERT (ECF No. 53); AND**<br><br>**(2) DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION TO APPOINT COUNSEL (ECF No. 54)** |

　　　　Plaintiff Brian Kakowski ("Plaintiff"), a state prisoner incarcerated at the Richard J. Donovan Correctional Facility ("RJD") in San Diego, California, is proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.  (ECF Nos. 1, 29, 32.)  Presently before the Court is Plaintiff's motion for neutral expert and a renewed motion to appoint counsel.  (ECF Nos. 53, 54.)  For the reasons set forth below, Plaintiff's motions are **DENIED** without prejudice.

## I. BACKGROUND

### A. Factual Background

The following allegations are taken from the FAC, the operative complaint in this case:

In count one of the FAC, Plaintiff alleges that Defendants California Department of Corrections and Rehabilitation ("CDCR") Secretary Kathleen Allison, RJD Warden Marcus Pollard, Plaintiff's primary treating physician at RJD, Dr. Clayton, and H. Moseley, the Chief Appeals Officer of CDCR, failed to protect him and were deliberately indifferent to his health and safety in violation of equal protection and the prohibition against cruel and unusual punishment under the Eighth and Fourteenth Amendments. (ECF No. 32 at 6.) Plaintiff alleges these Defendants failed to enforce California Code of Regulations, Title 15, § 3052(g), a copy of which he attaches to the FAC, which provides: "No inmate shall be assigned to the food service area until medically cleared to handle food." (*Id.* at 4; ECF No. 32-1 at 9.) He claims that as a result of their failure to enforce that regulation, inmates with contagious diseases are working in the kitchens contaminating food, which "led to Plaintiff re-contracting Hepatitis-C." (*Id.*)

Plaintiff alleges these Defendants are allowing their subordinates free reign with little or no oversight to permit inmates to volunteer in the kitchens without medical clearance, which is the moving force behind the ongoing constitutional violation. (*Id.*) He alleges Defendant Pollard personally participated in the violation when Pollard, rather than investigate his complaint, denied his inmate grievance on the issue by stating, in direct violation of the California regulations, that "inmates are not precluded from holding a position in culinary based on medical prognosis." (*Id.* at 5; ECF No. 1 at 24.) Plaintiff claims that, as a result, inmates on the high-risk medical yard are allowed to work in the kitchens without being medically cleared as required by prison regulations, causing unsafe and unsanitary conditions in the kitchens. (ECF No. 32 at 5.)

Plaintiff claims Defendant Moseley "made false claims and falsified documents claiming chronos are up to date, everybody & everyone is medically cleared," which

Plaintiff alleges is proven false by the declaration of a kitchen worker attached to the FAC and other documents and declarations he can present, and by the lack of documentation in possession of Defendants showing the regulations are being followed.  (*Id.* at 6–7; ECF No. 32-2 at 2–3.)  He states that he told Dr. Clayton during one of their visits that Dr. Clayton had a duty "to look into why inmates with AIDS & Hepatitis are not being properly screened prior to being assigned to the kitchens here at RJD," and that Dr. Clayton was not following the regulations and not investigating the violations which have been documented.  (ECF No. 32 at 8.)

In count two of the FAC, Plaintiff claims Defendant Dr. Clayton was deliberately indifferent to his need for medical treatment of Hepatitis-C in violation of the Eighth Amendment which has resulted in liver damage.  (*Id.* at 9.)  Plaintiff alleges his requests for Hepatitis-C treatment and Interferon were "met with Tums & Ibuprofen—and I'm told to drink a lot of water."  (*Id.* at 8.)  He alleges he requested Interferon as a treatment "or whatever I thought he recommended—and all I was given—and still to this day are given is Tums & Ibuprofen."  (*Id.* at 9.)  He states that he has "been ignored which led me to be rushed to the hospital in April 2021" with acute liver failure.  (*Id.*)  Plaintiff claims he has documentation showing Dr. Clayton was aware that his failure to follow policies and procedures at RJD exposed Plaintiff to being re-infected with Hepatitis-C.  (*Id.* at 9–10.)

Plaintiff alleges that on December 27, 2021, as Dr. Clayton walked by, Plaintiff told him that he was still having issues with Hepatitis-C treatment, that he could feel his liver was not right because he was bloated and could not bend down at times, and would like to avoid another trip to the hospital, but Dr. Clayton told him he was no longer his physician, said: "I'm not in the business of helping people who are trying to sue me," and walked away.  (*Id.* at 14.)  Plaintiff claims Dr. Clayton ignored signs of liver failure reported by Plaintiff, including dark brown urine, stomach pain, and back aches, but "time and time again I was ignored."  (*Id.* at 10.)  He claims he could have been treated with Interferon or Ribavirin by Dr. Clayton for over a year before his liver failure.  (*Id.*)

///

Plaintiff seeks to hold Defendants Dr. S. Roberts, the Chief Medical Executive at RJD, M. Glynn, the Chief Executive Officer of the California Correctional Health Care Services ("CCHCS"), and S. Gates, the Chief of Policy and Risk Management for CCHCS, "accountable for their inaction to my requests which have attributed to deliberate indifference to my medical needs." (*Id.* at 11.) He claims all three Defendants, along with Defendant Secretary Allison, "are the policy makers with regard to" the actions of the CCHCS and CDCR and became liable when they read and disregarded his "cry for help through the grievance process." (*Id.*) He contends that denial of treatment is a de facto policy of RJD, CCHCS, and CDCR. (*Id.* at 13.)

Finally, Plaintiff claims his right to equal protection has been violated because his cellmate is being treated with a synthetic heroin called Suboxone because he was a heroin user, which allows him to have his Hepatitis treated with a drug called Harvoni, but Plaintiff is not entitled to be prescribed Harvoni because he was never a heroin user and is not prescribed Suboxone. (*Id.*)

## B.  Procedural Background

Plaintiff commenced this civil rights action on September 22, 2021, by filing a complaint and a motion to proceed *in forma pauperis*. (ECF Nos. 1, 2.) Plaintiff thereafter filed a motion to appoint counsel. (ECF No. 24.) On December 21, 2021, the Court granted Plaintiff's motion to proceed *in forma pauperis*, denied without prejudice his motion to appoint counsel, and dismissed his complaint with leave to amend pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915(A). (ECF No. 29.)

On January 12, 2022, Plaintiff filed a First Amended Complaint ("FAC"). (ECF No. 32.) After screening pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915(A), the Court dismissed all of Plaintiff's claims against all Defendants, except Plaintiff's Eighth Amendment claim against Pollard, Clayton, and Moseley for deliberate indifference to Plaintiff's serious medical needs. (ECF No. 33.) Defendants Clayton and Pollard have filed an answer. (ECF Nos. 49, 51.) Defendant Moseley has not yet been served. On

May 20, 2022, the Court issued a Case Management Conference Order which regulates discovery and other pretrial proceedings in this case. (ECF No. 50.)

Currently before the Court is Plaintiff's motion for neutral expert and a renewed motion to appoint counsel. (ECF Nos. 53, 54.)

## II. DISCUSSION

### A. Motion to Appoint Neutral Expert

#### 1. Legal Standard

An expert witness may testify to help the trier of fact understand the evidence or determine a fact in issue. Fed. R. Evid. 702. Under Federal Rule of Evidence 706, a court may, on a party's motion or on its own, appoint an expert witness. Fed. R. Evid. 706(a). The decision whether to appoint a neutral expert is discretionary. *See Claiborne v. Blauser*, 934 F.3d 885, 901 n.7 (9th Cir. 2019) (citing *McKinney v. Anderson*, 924 F.2d 1500, 1511 (9th Cir. 1991) (holding that a district court has discretion to appoint an expert witness in a prisoner civil rights case with complex scientific evidence)). Appointment of an expert witness may be appropriate when "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a); *Torbert v. Gore*, No. 14cv2911 BEN (NLS), 2016 WL 3460262, at *2 (S.D. Cal. June 23, 2016); *see also Armstrong v. Brown*, 768 F.3d 975, 987 (9th Cir. 2014) ("A Rule 706 expert typically acts as an advisor to the court on complex scientific, medical, or technical matters.").

While the Court has the discretion to appoint an expert and to apportion costs, including the apportionment of costs to one side, Fed. R. Evid. 706(c)(2); *Ford ex rel. Ford v. Long Beach Unified School Dist.*, 291 F.3d 1086, 1090 (9th Cir. 2002), Rule 706 is not a means to avoid the *in forma pauperis* statute's "prohibition against using public funds to pay for the expenses of witnesses," *Manriquez v. Huchins*, No. 1:09-CV-00456-LJO, 2012 WL 5880431, at *12 (E.D. Cal. Nov. 21, 2012), nor does Rule 706 "contemplate court appointment and compensation of an expert witness as an advocate for one of the parties,"

*Faletogo v. Moya*, No. 12CV631 GPC WMC, 2013 WL 524037, at *2 (S.D. Cal. Feb. 12, 2013).

### 2. Discussion

Here, Plaintiff fails to explain how appointment of a neutral expert witness would assist the Court in understanding the evidence or determining a fact in issue. This case is still in the early discovery phase. No dispositive motions have been filed and no trial has been set. (*See* ECF No. 50.) Therefore, there is no pending matter where the Court would require the assistance of an expert witness.

Moreover, Plaintiff does not explain how this case involves scientific evidence or complex issues. *See McKinney*, 924 F.2d at 1511 (appointment of an expert witness may be appropriate if the action involves scientific evidence or complex issues). The simple fact that Plaintiff is pursuing an Eighth Amendment claim for deliberate indifference to serious medical needs does not necessitate the appointment of a medical expert. *See, e.g.*, *Woods v. Carey*, 488 F. App'x 194, 196 (9th Cir. 2012) (finding the district court did not abuse its discretion in denying a prisoner's request for appointment of a dental expert to support a deliberate indifference to serious medical needs claim because there "were no complex or scientific issues present in th[e] case, and an expert was not necessary to explain to the jury the extent of [the plaintiff's] pain and suffering as a result of his inability to obtain dental treatment"); *Sanders v. York*, 446 F. App'x 40, 43 (9th Cir. 2011) (finding the district court did not abuse its discretion in denying a prisoner's request for an expert to support his deliberate indifference to serious medical needs claim where the prisoner did not demonstrate that "expert testimony would have been helpful, much less important or necessary to explain complex scientific issues or evidence," noting that "[e]xpert testimony about the effects of the defendants' alleged deliberate indifference was not necessary"); *Torbert v. Gore*, No. 14cv2911 BEN (NLS), 2016 WL 3460262, at *2 (S.D. Cal. June 23, 2016) (noting that in the context of a deliberate indifference to serious medical needs claim "the question of whether the prison officials displayed deliberate indifference to

[Plaintiff's] serious medical needs [does] not demand that the jury consider probing, complex questions concerning medical diagnosis and judgment" (citation omitted)).

Based on the foregoing, the Court **DENIES** without prejudice Plaintiff's motion for appointment of neutral expert.

### B. Motion to Appoint Counsel

#### 1. Legal Standard

The Constitution provides no right to appointment of counsel in a civil case unless an indigent litigant may lose his physical liberty if he loses the litigation. *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 25 (1981). However, under 28 U.S.C. § 1915(e)(1), courts are granted discretion to appoint counsel for indigent persons under "exceptional circumstances." *Agyeman v. Corr. Corp. of Am.*, 390 F.3d 1101, 1103 (9th Cir. 2004). A finding of exceptional circumstances demands at least "at least an evaluation of the likelihood of the plaintiff's success on the merits and an evaluation of the plaintiff's ability to articulate his claims 'in light of the complexity of the legal issues involved.'" *Id.* (quoting *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986)).

Only "rarely" will a federal court find a case to be so complex that it is appropriate to appoint counsel for a civil litigant who faces no loss of liberty in the controversy at hand. *Williams v. Navarro*, No. 3:18-cv-01318-DMS-RBM, 2021 WL 634752, at *2 (S.D. Cal. Feb. 17, 2021). This includes civil rights litigation involving deliberate indifference to medical care. *See, e.g.*, *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991) (finding the trial court did not abuse its discretion by refusing to appoint counsel for a pro se prisoner alleging an Eighth Amendment deliberate indifference to serious medical need claim); *cf Tilei v. McGuinness*, 642 F. App'x 719, 722 (9th Cir. 2016) (finding the appointment of counsel warranted where the plaintiff's deliberate indifference claim was "legally complex" and "will turn on complex medical questions of competing treatment regimens and causation, and likely require the testimony of expert witnesses," the plaintiff is "incapable of articulating that claim," *and* the plaintiff's complaint states a claim for relief).

///

  2. <u>Discussion</u>

Plaintiff renews his request for appointment of counsel on the following grounds: (1) he is indigent and unable to afford counsel; (2) the issues in this case are complex; (3) the case contains several legal claims against several defendants, along with medical issues that may require expert testimony; (4) Plaintiff has demanded a jury trial; (5) Plaintiff lacks the ability to investigate or subpoena things; and (6) there will be conflicting testimony and possible credibility issues. (ECF No. 54 at 3.)

Here, there are no "exceptional circumstances" to justify appointment of counsel at this time. Plaintiff's arguments in support of appointment of counsel are typical of almost every pro se prisoner civil rights plaintiff and alone are insufficient to satisfy the "exceptional circumstances" standard. *See, e.g.*, *Thompson v. Paramo*, No. 16cv951-MMA (BGS), 2018 WL 4357993, at *1 (S.D. Cal. Sept. 13, 2018) (finding a pro se prisoner civil rights plaintiff's argument that his case is factually and legally complex, he has a limited ability to investigate and present his case, he needs discovery, he is indigent, and he lacks legal training to be circumstances that are typical of almost every pro se prisoner civil rights plaintiff and alone are insufficient to demonstrate exceptional circumstances); *Jones v. Kuppinger*, 13cv451-WBS (AC), 2015 WL 5522290, at *3 (E.D. Cal. Sept. 17, 2015) ("Circumstances common to most prisoners, such as a deficient general education, lack of knowledge of the law, mental illness and disability, do not in themselves establish exceptional circumstances warranting appointment of voluntary civil counsel."); *Taa v. Chase Home Fin., LLC*, No. 5:11-cv-00554 EJD, 2012 WL 507430, at *2 (N.D. Cal. Feb. 15, 2012) (noting that plaintiffs' lack of legal training and poverty did not constitute exceptional circumstances, as these are the types of difficulties many other litigants face in proceeding pro se).

Plaintiff has thus far drafted and submitted several pleadings without the assistance of counsel. In addition to the instant motion, Plaintiff has submitted a complaint (ECF Nos. 1, 6, 10, 12, 14, 16, 18, 20, 22, 26, 28, 31), a motion to proceed *in forma pauperis* (ECF No. 2), a prisoner trust fund account statement (ECF No. 4), two motions to appoint

8

21-cv-01675-JAH-JLB

counsel (ECF Nos. 24, 54), an amended complaint (ECF Nos. 32, 35, 39, 44), a motion to have Defendant Moseley served with a copy of the complaint (ECF No. 42); a request for Defendants to respond to service (ECF No. 43), and a motion for neutral expert (ECF No. 53). Upon review of his filings, it is apparent Plaintiff can articulate his claims and legal arguments and advocate for himself. "When a pro se plaintiff shows he understands basic litigation procedure and is able to articulate his claims, he does not demonstrate exceptional circumstances to warrant appointing counsel." *Thompson*, 2018 WL 4357993, at *1 (citing *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009)); *see also LaMere v. Risley*, 827 F.2d 622, 626 (9th Cir. 1987) (affirming a district court's denial of request for appointment of counsel where pleadings demonstrated the petitioner had "a good understanding of the issues and the ability to present forcefully and coherently his contentions").

Moreover, the claim and issues in this case are not complex. After screening of his First Amended Complaint, Plaintiff is only proceeding with a "relatively straightforward" Eighth Amendment claim that is similar to many cases that have been considered by this court. *Harrington v. Scribner*, 785 F.3d 1299, 1309 (9th Cir. 2015). Plaintiff claims he lacks the "ability to investigate or subpoena things." (ECF No. 54 at 3.) However, Plaintiff is not precluded from conducting discovery and requesting documents in this case. (*See* ECF Nos. 50, 57.) "If all that was required to establish successfully the complexity of the relevant issues was a demonstration of the need for development of further facts, practically all cases would involve complex issues." *Wilborn*, 789 F.2d at 1331.

Plaintiff further claims there will be conflicting testimony, possible credibility issues and a jury trial, and that he may require an expert. (ECF No. 54 at 3.) However, this case is barely entering the discovery case. Therefore, these concerns do not present exceptional circumstances warranting appointment of counsel at this time. *See Leon v. Celaya*, No. 20-cv-00899-AJB-BGS, 2021 WL 533514, at *4 (S.D. Cal. Feb. 12, 2021); *see also Eusse v. Vitela*, No. 3:13-cv-00916-BEN, 2015 WL 4404865, at *3 (S.D. Cal. July 16, 2015) (finding the plaintiff's concerns that "he has demanded a jury trial and he is ill-suited to present his case or handle issues of conflicting testimony and credibility on his own . . . do

not present an exceptional circumstance warranting appointment of counsel [where the] case is still in the discovery phase"); *Morris v. Barr*, No. 10-cv-2642-AJB BGS, 2011 WL 3859711, at *3 (S.D. Cal. Aug. 31, 2011) (finding "the potential need for experts, and [the plaintiff's] ability to obtain discovery and conduct depositions are not exceptional circumstances warranting the appointment of counsel").

Lastly, although Plaintiff's Eighth Amendment claim survived initial screening pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), it is too early to determine whether Plaintiff's claims will survive a motion for summary judgment. At this time, Plaintiff offers no evidence other than his own assertions to support the claims in his First Amended Complaint. *See Bailey v. Lawford*, 835 F. Supp. 550, 552 (S.D. Cal. 1993) (finding that the plaintiff failed to demonstrate likelihood of success on the merits where he offered "no evidence other than his own assertions to support his claims"). Thus, this factor does not support Plaintiff's request for appointed counsel. *See Garcia v. Smith*, No. 10-cv1187-AJB (RBB), 2012 WL 2499003, at *3 (S.D. Cal. June 27, 2012) (denying motion for appointment of counsel when it was too early to determine whether any of the plaintiff's claims would survive a motion for summary judgment).

Based on the foregoing, the Court finds that Plaintiff has not established the "exceptional circumstances" required for appointment of counsel at this time. Plaintiff has not demonstrated a likelihood of success on the merits or that he is unable to articulate his claims considering the complexity of the issues involved. Accordingly, Plaintiff's renewed motion for appointment of counsel is **DENIED** without prejudice.

///
///
///
///
///
///
///

### III. CONCLUSION

For the foregoing reasons, Plaintiff's motion for neutral expert and renewed motion to appoint counsel (ECF Nos. 53, 54) are **DENIED** without prejudice.

**IT IS SO ORDERED.**

Dated: June 27, 2022

Hon. Jill L. Burkhardt
United States Magistrate Judge